UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| KERRI ELLEN ARSENAULT, | ) | |
| | ) | |
|     *Plaintiff* | ) | |
| | ) | |
| v. | ) | Civil No. 08-269-P-H |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
|     *Defendant* | ) | |

### REPORT AND RECOMMENDED DECISION[1]

The plaintiff in this Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal contends that the administrative law judge's hypothetical question to a vocational expert was fatally incomplete; that the administrative law judge failed to include a necessary mental limitation in the residual functional capacity he assigned to the plaintiff; that the opinion of an examining source was improperly evaluated, that the residual functional capacity assigned has no medical support; and, that the administrative law judge improperly evaluated the plaintiff's credibility. I recommend that the court affirm the commissioner's decision.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 609 F.2d 5, 6 (1st

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on March 20, 2009, pursuant to Local Rule 16.3(a)(2)(C) requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act only through December 31, 2005, Finding 1, Record at 18; that she suffered from obesity, right shoulder tendonitis, plantar fasciitis, an affective disorder, and a personality disorder, impairments that were severe but which, considered alone or in combination, did not meet or medically equal the criteria of any of the impairments listed in Appendix 1 to Subpart P, 20 C.F.R. Part 204 (the "Listings"), Findings 3-4, *id*. at 18-19; that she had the residual functional capacity to perform light work with the following exceptions: she could not climb ladders, ropes, or scaffolds, she could bend only occasionally, she could not frequently push or pull, she could not frequently lift with her right arm, and she could only occasionally interact with coworkers, supervisors, and the general public, Finding 5, *id*. at 19-20; that she was unable to perform any past relevant work, Finding 6, *id*. at 23; that, given her age (45 years old at the time of the decision), high school education, work experience, and residual functional capacity, and using Appendix 2 to Subpart P, 20 C.F.R. Part 404 (the "Grid") as a framework for decision-making, there were jobs in significant numbers in the national economy that she could perform, Findings 7-10, *id*.; and that she therefore had not been under a disability, as that term is defined in the Social Security Act, at any time from January 1, 2001, the alleged date of onset, through the date of the decision, Findings 2 & 11, *id*. at 18 & 24.  The Appeals Council declined to review the decision, *id*. at 5-7, making it the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.  42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the

determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain positive evidence in support of the commissioner's findings regarding the plaintiff's residual work capacity to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## Discussion

### A. Vocational Testimony

The administrative law judge consulted a vocational expert in this case, as is usually required when the Grid is used as a framework for decision-making. *Heggarty v. Sullivan*, 947 F.2d 990, 996 (1st Cir. 1991). The plaintiff contends that the hypothetical question posed to the vocational expert by the administrative law judge failed to include several limitations that the administrative law judge's opinion found to exist and produced the only evidence in the record as to the availability of jobs in the national economy that the plaintiff could perform, given her impairments. Itemized Statement of Errors Pursuant to Local Rule 16.3 ("Itemized Statement") (Docket No. 6) at 2-3. The responses of a vocational expert are relevant only to the extent offered in response to hypothetical questions that correspond to the medical evidence of record. *Arocho v. Secretary of Health & Human Servs.*, 670 F.2d 374, 375 (1st Cir. 1982).

The hypothetical question asked of the vocational expert in this case included the following elements:

> A younger individual with a high school education, the past relevant work experience of this particular Claimant, capable of occasionally lifting 20 pounds, frequently lifting 10 pounds, standing or walking about three to four hours in 30 minute increments, sitting for about six hours, no ladders, ropes, scaffolds, or crawling, occasional limitations in climbing, balancing, stooping, kneeling, or crouching, no frequent pushing or pulling greater than 20 pounds with the right upper extremity, no frequent overhead work on the right, no frequent vibrating hand tools on the right. . . . no concentrated exposure to respiratory irritants. Capable[][of frequent] public interaction, okay with coworkers and supervisors, . . . capable of semiskilled work . . . low stress work, defined as occasional judgment, occasional changes in a work setting, occasional decision making.

Record at 486-88. The plaintiff points to three differences between the terms of this question and the residual functional capacity assigned to the plaintiff by the administrative law judge in his opinion.

First, the hypothetical question does not mention the limitation in the opinion that the plaintiff "cannot frequently lift with her right arm." *Id.* at 20. Next, the hypothetical question limits the plaintiff to frequent interaction with the public, while the opinion limits her to occasional interaction with the public. *Id.* Finally, the hypothetical states that the plaintiff is "okay with" coworkers and supervisors, while the opinion limits her to occasional interaction with coworkers and supervisors. *Id.* The plaintiff asserts, in conclusory terms, that "[t]hese errors cannot be considered harmless as it cannot be said what the vocational significance of the additional limitations would be." Itemized Statement at 3.

But with respect to the first alleged difference, the vocational expert testified that the two jobs available to the plaintiff that she identified in response to the hypothetical question "would not be impacted" by the addition of the arm-lifting limitation. Record at 491. Accordingly, any

4

error in omitting that limitation from the hypothetical question was harmless.  With respect to the two remaining differences, however, it is not possible to conclude, without vocational expert testimony, that a limitation to occasional interaction with the public, coworkers, and supervisors is consistent with the light-level job of receptionist and the sedentary-level job of charge account clerk.  *Id*. at 488-89.  The definitions of both of these jobs in the *Dictionary of Occupational Titles* appear to involve considerable interaction with the public.  *Dictionary of Occupational Titles* (U.S. Dep't of Labor, 4th ed. rev. 1991), §§ 237.367-038 (receptionist), 205.367-014 (charge-account clerk).

The inquiry does not end there, however.  In this case, the administrative law judge also asked the vocational expert to identify sedentary-level jobs with the same non-exertional limitations.  *Id*. at 495.  An individual with a residual functional capacity for work at the light exertional level could obviously perform work at the sedentary exertional level.  The sedentary jobs identified by the vocational expert were document preparer and cut and paste worker.  *Id*. at 495-96.  The definitions of those jobs in the *Dictionary of Occupational Titles*, at sections 249.587-014 (cutter-and-paster, press clippings) and 249.587-018 (document preparer, microfilming), do not appear to require much contact with the public or any significant lifting with the right arm.  Both descriptions note under the heading "People" that "Taking Instructions – Helping" is required and that this is "Not Significant."  Other courts have found this entry to indicate that interaction with the public and/or coworkers and supervisors is not significant or not more than occasional, *Hacker v. Astrue*, 2008 WL 4224952 (W.D.Okla. Sep. 10, 2008), slip op. at 4 n.1 and DOT § 311.677-010 (cafeteria attendant); *Seamon v. Astrue*, 2008 WL 3925829 (W.D.Wisc. Aug. 19, 2008), at *7 & *12 and DOT §§ 311.677-010 (cafeteria attendant) & 788.687-018 (brusher, boot and shoe industry); *Anderson v. Commissioner of Soc. Sec.*, 2008

5

WL 619209 (D.N.J. Mar. 4, 2008), at *9 and DOT §§ 222.587-038 (router), 222.687-014 (garment sorter), & 222.587-050 (swatch clerk).

I find the reasoning of these courts to be persuasive. Accordingly, the plaintiff is not entitled to remand on the basis of the first challenge that she raises.

### B. Concentration, Persistence, or Pace

The plaintiff next contends that the administrative law judge erred by not including the moderate difficulties he found the plaintiff to have in maintaining concentration, persistence, or pace in the residual functional capacity he assigned to her. Itemized Statement at 3-4. The administrative law judge found that "the claimant's depression and personality disorder . . . result in moderate difficulties in her ability to maintain concentration, persistence or pace." Record at 19. This finding is not included in the assigned residual functional capacity. *Id*. at 19-20. There is some discussion in the administrative law judge's opinion of the plaintiff's failure to seek regular mental health treatment over the years and a mental health clinician's assessment in May 2006 that there was a "clear incongruence" between her reported symptoms and her observable behavior, *id*. at 22, but nothing in that discussion is inconsistent with the residual functional capacity determination.

The plaintiff argues that a limitation to occasional interaction with the public, coworkers, and supervisors is inconsistent with moderate difficulties in the ability to maintain concentration, persistence, or pace. Itemized Statement at 3-4. She cites this court's recommended decision in *Leighton v. Astrue*, Civil No. 07-142-B-W (June 30, 2008), in support of this argument. In *Leighton*, the administrative law judge found that the claimant could "occasionally, but incidentally, have contact with the public, tolerate occasional routine supervision, interact occasionally with up to 10 coworkers, adapt to occasional work changes, and maintain a goal-

oriented pace, but not a production rate." Slip op. at 2. Noting that "[it] is significant that the administrative law judge included in the assigned residual functional capacity that the occasional contact with the public also be incidental[,]" *id*. at 5, I concluded that "[t]he limitations on contact with the public, routine supervision, interaction with coworkers, and work changes and pace are not consistent with" moderate difficulties in maintaining social functioning and concentration, persistence, or pace. *Id*. at 6.

The limitations at issue in *Leighton*, other than the moderate difficulties in maintaining concentration, persistence, or pace, were significantly more severe than those at issue in this case. Here, there is no limit on the ability to adapt to work changes, no limit on the number of coworkers with whom the plaintiff can occasionally interact, no other limitations on social functioning, and, most importantly, no limitation to only incidental contact with the public. This distinction is emphasized by the case law cited in *Leighton* on this point.

In *Edwards v. Barnhart*, 383 F.Supp.2d 920, 930 (E.D.Mich. 2005), the issue was not whether a moderate limitation in the ability to concentrate, persist, and keep pace was inconsistent with a limitation to occasional interaction with the public, coworkers, and supervisors, but rather whether such a moderate limitation was adequately conveyed by an unspecified limitation "with co-workers, supervisors and the public, and to jobs entailing no more than simple, routine, unskilled work." *Id*. at 930 (internal quotation marks omitted). Because of the absence of any indication of the degree of limitation "with" the public, coworkers, and supervisors, and the presence of a significant additional limitation not at issue here, *Edwards* is of little help.

Similarly, in *Whack v. Astrue,* 2008 WL 509210 (E.D.Pa. Feb. 26, 2008), at *7, the issue was whether a hypothetical question posed to a vocational expert adequately conveyed the

7

claimant's mental impairments when it omitted a moderation limitation on concentration, persistence, and pace. The case law cited by the *Whack* court held that a limitation to simple, repetitive one- to two-step tasks was not sufficient when the administrative law judge had found that the claimant often suffered from deficiencies in concentration, persistence, and pace; and that when that limitation was coupled with one involving "limited" contact with the public and coworkers, the restriction to simple, low-stress, one- to two-step tasks was not sufficient. *Id*. at 8. Here, there is no limitation to simple, low stress work or one- to two-step tasks. As the court noted in *Hofslien v. Barnhart*, 172 Fed.Appx. 116, 119-20 (7th Cir. 2006), moderate restrictions in maintaining concentration, persistence, and pace correspond to limits on production pressures, not degree of contact with the public, supervisors, or coworkers.[2]

The plaintiff's argument compares apples to oranges. She is not entitled to remand on this basis.

### C.  Evaluation of Examining Source Report

The plaintiff next attacks the administrative law judge's treatment of the evaluation performed by Roger Phelps, M.D., a consulting examining physician. Itemized Statement at 4. She argues that the failure to mention a moderate limitation of reaching in the right upper extremity found by Dr. Phelps violates 20 C.F.R. §§ 404.1527 and 416.927, as well as Social Security Rulings 96-2p and 96-5p, although she does not specify how this violation allegedly occurred. This presentation of an issue is too cursory to allow the court to address it without spending significant time and effort in an attempt to determine what the plaintiff means. *See Graham v. United States*, 753 F. Supp. 994, 1000 (D. Me. 1990) ("It is settled beyond

---

[2] *See Garcia-Martinez v. Barnhart*, 111 Fed.Appx 22, 23, 2004 WL 2240136 (1st Cir. Oct. 1, 2004), at **1 (limit to work that did not involve interaction with public did not significantly interfere with performance of full range of unskilled work).

peradventure that issues mentioned in a perfunctory manner, unaccompanied by some effort at developed argumentation are deemed waived.") (citation and internal quotation marks omitted).

At oral argument, counsel for the plaintiff repeated the argument set forth in the itemized statement, adding that the failure of the administrative law judge to discuss Dr. Phelps' limitation on reaching and to discredit that opinion required remand, particularly because both jobs identified by the vocational expert require frequent reaching. Assuming that this presentation provides the necessary detail lacking in the itemized statement, counsel for the commissioner pointed out in response that the vocational expert testified that this limitation from Dr. Phelps' report would not "impact" the jobs of receptionist or charge account clerk. Record at 491. In addition, as the commissioner's attorney also pointed out, one of the state-agency non-examining physicians who specifically noted this limitation in Dr. Phelps' report, *id*. at 339, specifically found that the plaintiff should only "[a]void frequent overhead work on the right," *id*. at 336. This limitation is certainly consistent with the jobs identified by the vocational expert.

Any failure by the administrative law judge to discuss this specific limitation in Dr. Phelps' report is accordingly harmless error.

### D. Raw Medical Data

The plaintiff next contends, again in notably terse fashion, that the residual functional capacity assigned to her by the administrative law judge "is not based on the State Agency RFCs [residual functional capacities], nor on any other medical opinion" and must therefore be based on the administrative law judge's own interpretation of the raw medical evidence, which is forbidden by caselaw such as *Gordils v. Secretary of Health & Human Servs.*, 921 F.2d 327, 329 (1st Cir. 1990). Itemized Statement at 5. She points out that the residual functional capacity

assessments by two state-agency physicians limit her "to essentially sedentary work due to a limitation to standing/walking at least 2 hours in an 8-hour workday." *Id*. at fn.

However, as I have already discussed, three of the four jobs identified by the vocational expert at the hearing were sedentary jobs. Thus, any error involved in the administrative law judge's decision to assign the plaintiff a residual functional capacity for light work can only have been harmless.

### E. The Credibility Analysis

The plaintiff's final challenge is to the administrative law judge's analysis of her credibility. *Id* at 5-7. The administrative law judge discussed the plaintiff's credibility extensively, covering over two pages of single-spaced text. The plaintiff argues that the analysis is "erroneous in several respects." Itemized Statement at 5.

The plaintiff first attacks the administrative law judge's statement that "the claimant indicated that she was working part-time in 2005 (Exhibit 9F)[,]" (R. 23) because she "testified that she returned to work in 2006 (R. 475), not 2005, and that is stated in the Decision in Finding 2 (R. 18)." Itemized Statement at 5. The plaintiff did testify at the hearing that she had "been working since November of 2006," Record at 475, and the administrative law judge's opinion accurately reports that testimony, *id*. at 18, but it is also true that in Exhibit 9F, *id*. at 162-66, a report, dated October 2005, of Richard J. Parker, Ph.D., a consulting psychologist who examined the plaintiff, Dr. Parker records that "[s]he stated that she is now employed at Pizza and More (formerly, the Bath's House of Pizza and Seafood), which is a year round restaurant." *Id*. at 164. The "S" in the second "she" has a line drawn through it, and the context makes it likely that this

10

sentence in fact refers to the plaintiff's husband, but it is easy to see how the administrative law judge might have missed the correction, if indeed that is what it is.[3]

The plaintiff's second challenge to the credibility analysis is a contention that, because the administrative law judge found her four months of work in 2007 to constitute an unsuccessful work attempt, *id*. at 18, he may not also use that work to suggest that she may have been able to continue working at that level, thereby casting doubt on her credibility. Itemized Statement at 6. She cites no authority for this proposition. It is clear from the opinion that the administrative law judge gave the plaintiff the benefit of the doubt in finding that this work was not substantial gainful activity, so that he could proceed beyond the first step of the sequential evaluation process. Record at 18. That action does not appear to me to be logically inconsistent with using that work to question the claimant's credibility. *See, e.g., Pritchett v. Astrue*, 2008 WL 4861527 (E.D.Va. Nov. 10, 2008), at *7 (work that was not deemed substantial gainful activity is still evidence that can detract from claimant's credibility); *Kellum v. Astrue*, 2008 WL 4194524 (N.D.Fla. Sept. 9, 2008), at *2 (same); *Phares v. Commissioner of Soc. Sec.*, 2008 WL 2026097 (N.D.W.Va. May 9, 2008), at *15 (same).

The plaintiff next asserts that an alleged poor work record may not be used "as a permissible basis for finding limited credibility," citing this court's recommended decision in *Black v. Barnhart*, 2006 WL 1554645 (D. Me. June 1, 2006). Itemized Statement at 6. The plaintiff is correct on this point. *Black*, 2006 WL 1554645 at *5.

Finally, the plaintiff attacks the conclusion that her credibility was limited due to "alleged failure to follow treatment and gaps in treatment" because the administrative law judge did "not perform the analysis required by Social Security Rulings 82-59 and 96-7p." Itemized Statement

---

[3] At oral argument, counsel for the commissioner conceded that the finding that the plaintiff had worked in 2005 was in error.

11

at 6-7. She asserts that she "indicated that she discontinued treatment because she lost medical insurance (R. 480-82); whether an individual can afford treatment is a factor which must be considered under the above-cited Rulings, and was not considered by the Decision." *Id*. at 7.

The cited testimony from the plaintiff was only that she had lost MaineCare, the state's Medicaid coverage, in May 2006. Record at 480. That lack of coverage could not have affected the gaps in treatment recorded by the administrative law judge in the period from 2001 through 2006. *Id*. at 21-22. The plaintiff's date last insured, after all, was December 31, 2005, so the one period in which there is evidence that the plaintiff lacked insurance coverage could have no effect at all on her claim for SDI. With respect to the SSI claim, the evidence supports the administrative law judge's use of the gaps in treatment before May 2006 to cast doubt on the plaintiff's credibility.

In sum, while there exist two errors in the administrative law judge's analysis of the plaintiff's credibility, the extensive consideration given to the topic, based on unchallenged or correct interpretations of the evidence, eclipses those errors and renders them insufficient to require a rejection of the administrative law judge's conclusion.

## Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de novo</u> review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within ten (10) days after being served with a copy thereof. A responsive memorandum and any request for oral*

*argument before the district judge shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 12th day of April, 2009.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge